NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENNIS L.,<br><br>     Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>     Defendant. | Civil Action No. 22-6537 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Dennis L.'s ("Plaintiff")[1] appeal of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his request for Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act (the "Act"). (ECF No. 1.) The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Commissioner is affirmed.

**I. BACKGROUND**

In this appeal, the Court must consider whether the Administrative Law Judge's (the "ALJ") finding that Plaintiff was not disabled is supported by substantial evidence. The Court begins with the procedural posture and the ALJ's decision.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

### A.    Procedural History

On February 27, 2020, Plaintiff filed an application for DIB alleging disability beginning August 15, 2018. (AR 15, ECF No. 3.[2]) Plaintiff's claim was denied both initially and on reconsideration. (*See id.* at 15, 83, 119-23) Thereafter, Plaintiff submitted a written request for a hearing before an ALJ. (*Id.* at 117-18.)

On July 6, 2021, the ALJ held a telephone hearing with the parties and an impartial vocational expert. (*See id.* at 34-82.) On July 29, 2021, the ALJ issued a decision denying Plaintiff's DIB application, finding that Plaintiff was not disabled under the Act. (*Id.* at 12-33.) Plaintiff appealed the decision. (*See id.* at 7-11.)

On September 15, 2022, the Social Security Administration's Appeals Council affirmed the ALJ's decision. (*Id.* at 1-6.) On November 9, 2022, Plaintiff filed an appeal to this Court and on September 12, 2023, submitted his moving brief. (*See generally* Compl. 1, ECF No. 1; Pl.'s Moving Br., ECF No. 9.) The Commissioner filed an opposition brief on March 27, 2024 (ECF No. 14) and Plaintiff declined to file a reply (ECF No. 15).

### B.    The ALJ's Decision

In his written decision, the ALJ concluded that Plaintiff was not disabled under the prevailing administrative regulations during the relevant time period. (AR 29.) The ALJ set forth the Social Security Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 16-17.) At step one, the ALJ found that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of August 15, 2018 through his date last insured of June 30, 2020." (*Id.* at 17.)

---

[2] The Administrative Record ("AR") is located at ECF No. 3. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

At step two, the ALJ determined that Plaintiff had several severe impairments during the relevant time period: lumbar degenerative disc disease, obesity, and bipolar disorder. (*Id.* at 17-18.) The ALJ found that Plaintiff's other alleged impairments are non-severe. (*Id.* at 18.) Specifically, the ALJ considered the record and Plaintiff's statements and testimony to determine that Plaintiff has physical impairments that do not result in work-related limitations, including a hernia and underactive thyroid. (*Id.*) The ALJ stated that Plaintiff's hernia was acute and treated with surgery in May 2019, and that the "record does not suggest that this surgery was unsuccessful or that [it] causes him any significant functional limitations." (*Id.*) The ALJ also found that Plaintiff's alleged thyroid condition does not interfere with his ability to work based on "the symptoms reported, if any, or level of treatment required[.]" (*Id.*)

Despite Plaintiff's impairments, the ALJ determined at step three that Plaintiff's impairments—namely, Plaintiff's skeletal spine issues, lumbar spinal stenosis, obesity, and mental impairment—did not meet or medically equate to one of the listed impairments in 20 C.F.R. §§ 404.1520, 404.1525, and 404.1526 during the relevant time period. (*Id.*)

The ALJ considered the entire record and determined that through the date last insured, Plaintiff had the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 404.1567(b). Plaintiff, however:

> was able to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He was able to sit for 6 hours in an [8] hour workday and stand and/or walk for 6 hours in an [8] hour workday. He was able to occasionally climb ramps and stairs. He was never able to climb ladders, ropes, or scaffolds. He was able to occasionally balance, stoop, crouch, kneel, or crawl. He was able to

---

[3] RFC is defined as that which an individual is still able to do despite the limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a); *see Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)). Determination of a claimant's RFC is the exclusive responsibility of the ALJ. 20 C.F.R. §§ 404.1527(e), 404.1546(c).

3

> understand, remember and carry out short, routine and repetitive instructions. He was able to sustain attention/concentration for 2-hour periods at a time and for 8 hours in the workday on short, routine repetitive instructions. He was able to use judgment in making work decisions related to short, routine repetitive instructions. [Plaintiff] required an occupation with only occasional co-worker contact and supervision. He required an occupation with set routine, procedures and instructions, and occasional changes during the workday. He required an occupation with only occasional contact with the public. He was able to do work with no requirement to meet defined production quotas such as production line work. He was able to maintain regular attendance and was able to be punctual within customary tolerances. He was able to perform activities within a schedule. He needed to avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights.

(*Id.* at 21.)

At step four, the ALJ found that Plaintiff, through the date last insured, was unable to perform past relevant work of "Maintenance Engineer," "Heating and Air Conditioning Installer-Servicer," and "Sales Representative Hearing [sic] and Air Conditioning." (*Id.* at 26-27.) The ALJ considered that Plaintiff was 41 years old as of the date last insured, which is defined as a "younger individual" (age 18-49), and has at least a high school education. (*Id.* at 27.) The ALJ determined that "[t]ransferability of job skills is not material . . . because [Plaintiff] is 'not disabled,' whether or not [he] has transferable job skills." (*Id.*) Based on the aforementioned factors and Plaintiff's RFC, the ALJ determined that there were alternative jobs that existed in significant numbers in the national economy that Plaintiff still could have performed. (*Id.* at 28.) In doing so, the ALJ relied upon the testimony of the vocational expert, who testified that an individual of Plaintiff's age, education, work experience, and RFC would have been able to perform representative occupations such as: "Cleaner"; "Marker"; or "Routing Clerk." (*Id.*)

At step five, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, from August 15, 2018 (the alleged onset date) until the date last insured (June 30, 2020) for the purposes of Plaintiff's DIB claim. (*Id.* at 29.)

## II. LEGAL STANDARD

### A. Standard of Review

When considering an appeal from the final decision of the Commissioner, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by "substantial evidence." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting 42 U.S.C. § 405(g)); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation and internal quotation omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is "supported by substantial evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014).

Even amid this deferential standard, the Third Circuit has explained that the court's review must be a qualitative exercise requiring a thorough examination of the ALJ's decision and the record:

> [The substantial evidence standard] is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of

> evidence will not satisfy the substantiality test if the Secretary [of Health and Human Services] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (citation omitted). It is, thus, necessary for ALJs to analyze all probative evidence and set out the reasons for their decisions. *Burnett*, 220 F.3d at 121. If the ALJ has not analyzed all probative evidence and has not sufficiently explained the weight given to the evidence, the decision is not supported by substantial evidence. *See Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) ("[T]o say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." (citations omitted)). The ALJ must state both the evidence considered as well as the evidence rejected. *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." (internal citation omitted)).

  **B.**   **Establishing Eligibility for DIB**

  To be eligible for DIB under the Act, a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). For purposes of the statute, a claimant is disabled only if his physical or mental impairments are "of such severity

6

that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Administrative regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). For the first step, the claimant must establish that he has not engaged in any substantial gainful activity since the onset of his alleged disabilities. *Id.* § 404.1520(a)(4)(i). For the second step, the claimant must establish that he suffers from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). The third step requires that the claimant provide evidence that his impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant demonstrates that he suffers from a listed impairment or that his severe impairment is equal to a listed impairment, he is presumed to be disabled and entitled to DIB benefits. *Id.*; 20 C.F.R. § 404.1520(d). If he cannot so demonstrate, the eligibility analysis proceeds to step four. *See* 20 C.F.R. § 404.1520(e).

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv). In doing so, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. *Id.*; SSR 96-8p, 61 Fed. Reg. 34474 (Jul. 2, 1996). Then, at step four, the ALJ determines whether the claimant's RFC permits him to resume previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant's RFC permits him to resume previous employment, the claimant is not "disabled" and thus not entitled to DIB benefits. *Id.*; 20 C.F.R. § 404.1520(f). If the claimant cannot continue in this line

7

of work, the analysis proceeds to step five. *See* 20 C.F.R. § 404.1520(a)(4)(v). Importantly, the burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with his medical impairments, age, education, past work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560. If the Commissioner cannot satisfy this burden, the claimant will receive DIB benefits. *Id.* § 404.1520(g).

**III.    DISCUSSION**

Plaintiff alleges that the ALJ erred in his decision denying DIB at step three and in determining Plaintiff's RFC because: (1) the ALJ failed to meaningfully consider Plaintiff's obesity; and (2) the ALJ failed to properly evaluate Plaintiff's psychiatric condition. (*See* Pl.'s Moving Br., ECF No. 9.)

    **A.    Plaintiff's Obesity**

Plaintiff asserts that the ALJ failed to consider Plaintiff's "morbid obesity" at step three and when determining Plaintiff's RFC. (Pl.'s Moving Br. 6-19.) The Court considers both arguments below.

        *1.    Step Three*

Plaintiff argues that at step three, the ALJ failed to provide a clear and satisfactory explanation as to why Plaintiff's obesity does not meet one of the listed impairments when considered individually or in combination with Plaintiff's orthopedic and psychiatric conditions. (Pl.'s Moving Br. 13-14.) Specifically, Plaintiff states that the ALJ's determination only "detail[s] the limitations which obesity *might cause*" and not "which limitations *[P]laintiff's obesity does cause*." (*Id.* at 13.)

Critically, "[Plaintiff] bears the burden to 'provide sufficient medical evidence . . . to show that [his] impairment is equal in severity to a listed impairment.'" *Collado v. Comm'r of Soc. Sec.*, No. 19-13458, 2020 WL 5939793, at *4 (D.N.J. Oct. 6, 2020) (first alteration in original) (quoting *Burnett*, 220 F.3d at 120 n.2). In short, Plaintiff "must show how any error in the step-three analysis 'would "affect the outcome of the case."'" *Id.* at *5 (quoting *Rutherford*, 399 F.3d at 553) (stating that it is insufficient for the plaintiff to "'repeatedly state[] that [his] circumstances were not compared to the listings' without an explanation of how 'an actual discussion of [his] impairments would lead to the conclusion that [he] was disabled at step three.'" (first alteration in original) (quoting *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016))). "Accordingly, when [a plaintiff] fails to provide record citations or discussion of the listing and merely contends that the ALJ's findings are inadequate, the Third Circuit has regularly affirmed the ALJ's findings." *Id.* at *4 (citing *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162-63 (3d Cir. 2008); *Creegan v. Comm'r of Soc. Sec.*, 142 F. App'x 567, 569 (3d Cir. 2005)).

In his moving brief, Plaintiff fails to provide proper citations to the record or make assertions that demonstrate that limitations caused by his obesity equate to a listed impairment. (*See generally* Pl.'s Moving Br.) Consequently, Plaintiff fails to "present medical findings equal in severity to all the criteria for the one most similar listed impairment[,]" and therefore his argument is without merit. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *see also Morris v. Comm'r of Soc. Sec.*, No. 19-8473, 2020 WL 6580778, at *3 (D.N.J. Nov. 10, 2020) (stating that the plaintiff "bears the burden of proof at step three" and denying the plaintiff relief because "[p]laintiff did not even attempt to demonstrate that the medical findings are equal in severity to all the criteria for any [l]isting" and "[t]he Commissioner bears no burden of disproof of equivalence."); *Farmer v. Comm'r of Soc. Sec.*, No. 19-13437, 2020 WL 6620152, at *3 (D.N.J.

9

Nov. 12, 2020) ("To the contrary, where, as here, the ALJ stated that he considered the impairments in combination, . . . it is [p]laintiff who bears the burden of proof on appeal that the ALJ erred and that the error prejudiced him." (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009))).

Plaintiff also argues that the ALJ's determination fails to "meaningfully consider the effect of [his] obesity" as required under *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). (Pl.'s Moving Br. 10.) Yet, *Diaz* is distinguishable from the facts of this case. In *Diaz*, the Third Circuit determined that the ALJ erred because "the ALJ made *no* reference to the consideration of obesity at step three[;]" in contrast, the ALJ in this case affirmatively "considered the combined effect of obesity with the other severe impairments[.]" *Morris*, 2020 WL 6580778, at *3 (emphasis added) (citing *Diaz*, 577 F.3d at 504). (*See* AR 19-20.) Indeed, the ALJ in this case considered that Plaintiff "is 6 feet, 4 inches in height, and weighed 354 pounds, . . . [which] correlate[d] to a body mass index [("BMI")] of 43." (AR 19.) Upon acknowledgment of the relevant regulations regarding obesity, the ALJ determined that:

> [Plaintiff]'s ability to perform routine movement and necessary physical activity within the work environment has been further impaired by obesity. The combined effects of obesity with [Plaintiff]'s other impairments [are] greater than might be expected without obesity. However, there is no evidence that [Plaintiff]'s obesity, in itself or in combination with other impairments, is of a severity as to medically equal a listing.

(*Id.* at 20.) As such, because the ALJ's opinion included a discussion of the combined effect of Plaintiff's impairments,[4] the Court finds that *Diaz*'s holding is inapposite. *See Diaz*, 577 F.3d at 504 (stating that "[w]ere there *any* discussion of the combined effect of [the claimant's] impairments, we might agree with the District Court" that the ALJ did not err).

---

[4] Additionally, the Court notes that "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). Nor is the ALJ required to "employ particular 'magic' words" or language, or "adhere to a particular format in conducting his analysis." *Diaz*, 577 F.3d at 504 (citation omitted).

10

## 2. RFC Determination

Similarly, Plaintiff argues that the ALJ failed to provide a meaningful review of Plaintiff's obesity in determining Plaintiff's RFC. (*See generally* Pl.'s Moving Br.)

Here, the ALJ noted that "[Plaintiff] has a history of obesity. [Plaintiff] is 6 feet, 4 inches in height, and weighed 354 pounds, findings that correlate to a [BMI] of 43." (AR 23.) The ALJ acknowledged that "[o]besity can cause limitations of . . . functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling[,]" among others. (*Id.* (stating that "[a]n individual may have limitations in any of the exertional functions . . . [and that] [i]ndividuals with obesity may have problems with the ability to sustain a function over time.").) The ALJ then noted that there was "sufficient evidence to consider [Plaintiff]'s obesity a severe impairment, including complaints of back pain that were possibly exacerbated by [Plaintiff]'s obesity." (*Id.*) Finally, the ALJ determined that "[Plaintiff]'s obesity was adequately accommodated with the [RFC]." (*Id.*)

Importantly, "Plaintiff bears the burden of proof at the point of RFC determination[.]" *Diaz v. Astrue*, No. 07-3220, 2008 WL 4104564, at *6 (D.N.J. Sept. 3, 2008) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). It is not the Commissioner's burden to disprove his disability. *Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000). Therefore, a plaintiff must "connect the dots between an omitted medically determinable impairment (or condition) and resulting limitations on [his] functional capacity, consistent with [his] burden." *Vanessa T-H. v. Comm'r of Soc. Sec.*, No. 23-2293, 2024 WL 1635685, at *6 (D.N.J. Apr. 16, 2024) (citing *Louis v. Comm'r of Soc. Sec.*, 808 F. App'x 114, 117 (3d Cir. 2020)). In other words, a plaintiff must "affirmatively point[] to specific evidence that demonstrates he should succeed." *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016) (citing *Shinseki*, 556 U.S. at 409) (rejecting plaintiff's argument that ALJ erred at step three because plaintiff "never explain[ed] how, even if the ALJ's analysis

11

was lacking, the deficiency was harmful" and because plaintiff "ha[d] not affirmatively pointed to specific evidence that demonstrates he should succeed"). "Gesturing in the direction of remand will not do." *Vanessa T-H.*, 2024 WL 1635685, at *6.

For many of the same reasons stated above, Plaintiff has failed to surmount his burden of persuasion as he again fails to affirmatively point to evidence in the record that the ALJ should have considered. *See Pickerin v. Colvin*, No. 14-6130, 2016 WL 5745103, at *5 (D.N.J. Sept. 30, 2016) (affirming the ALJ's decision because the "[p]laintiff does not offer any specific limitations that the ALJ should have included in the RFC assessment[,]" even though "it is [the p]laintiff's burden to show that the ALJ's finding of [RFC] was not supported by substantial evidence"). Here, Plaintiff "makes scant reference to anything the ALJ did write, but vaguely argues, without definitions or supporting authority," that the ALJ's findings are void of proper analysis. *Morris*, 2020 WL 6580778, at *4. (*See* Pl.'s Moving Br. 17-18.) Such general arguments that remand is required are insufficient. *See Morris*, 2020 WL 6580778, at *3 (declining to remand because plaintiff failed to "cite any definition of 'articulated discussion,' nor authority for the proposition that 'articulated discussion' is required.").

Because Plaintiff fails to point to any evidence that he lacks the RFC ascribed by the ALJ, the Court declines to remand on that basis. *See Daniel J. v. Kijakazi*, No. 20-9053, 2022 WL 874459, at *8 (D.N.J. Mar. 24, 2022) (declining to remand because the plaintiff did not identify "any specific functional limitations flowing from these conditions that the ALJ failed to include in the RFC.").

### B. Plaintiff's Psychiatric Condition

Next, Plaintiff argues that the ALJ failed to consider Plaintiff's severe bipolar II disorder, pain management, and medications and their side effects at step three and in the RFC determination. (Pl.'s Moving Br. 19-39.) The Court considers the arguments below.

#### *1. Step Three*

Plaintiff argues that at step three, the ALJ "cherry-picked snippets of evidence to arrive" at his conclusion that Plaintiff only has "moderate" or "mild" limitations in "area[s] of mental functioning." (Pl.'s Moving Br. 20-21.) Specifically, Plaintiff states that the ALJ considered "factors that differ from those demanded by the Commissioner's listings and impos[ed] outsized importance to irrelevant or anecdotal factors." (*Id.* at 21.)

To determine whether Plaintiff's mental conditions are medically equivalent to listing 12.04, as argued by Plaintiff, the ALJ must consider whether Plaintiff's affective disorder "satisfies both the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria." *Williams v. Comm'r of Soc. Sec.*, No. 20-12254, 2022 WL 279838, at *3 n.3 (D.N.J. Jan. 31, 2022) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04). To satisfy the paragraph B criteria of listing 12.04, Plaintiff must demonstrate that his affective disorder results in "'extreme limitation of one, or marked limitation of two' of the following areas of mental functioning:" (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and/or (4) adapt or manage oneself. *Id.* (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04).

The ALJ made the following determinations in the paragraph B criteria. First, the ALJ concluded that Plaintiff had "no more than a mild limitation understanding, remembering, or applying information" because "his memory was intact and his cognitive functioning was appropriate." (AR 20.) The ALJ considered that "[Plaintiff] was able to recall details of his past

13

work, his medical history, and his activities of daily living" and also "drive, attend church, read articles, use [a] smartphone, use a tablet, watch television, play games, and play with remote control cars." (*Id.*) Second, the ALJ concluded that Plaintiff "had, at most, a moderate limitation interacting with others" because "[d]espite being tense, [Plaintiff] . . . appeared calm and friendly [in] examination" and "displayed no signs of either depression or mood elevation." (*Id.*) The ALJ added that Plaintiff "is able to get along with friends and attend church." (*Id.*) Third, the ALJ determined that Plaintiff "had no more than a moderate limitation concentrating, persisting, or maintaining pace" because Plaintiff "appeared attentive" and could "accomplish tasks such as driving, attending church, reading, using a smartphone, using a tablet, playing games, watching television, and playing with remote control cars." (*Id.*) Lastly, the ALJ concluded that Plaintiff "ha[d] no more than a moderate limitation adapting and managing himself" because "[d]espite [Plaintiff]'s conditions, mental status examinations revealed that he has intact insight and judgment." (*Id.* at 20-21.) The ALJ noted that Plaintiff "has been described as being groomed during examination" and that "treatment for [Plaintiff]'s condition has been conservative in nature" such that "[t]here is no indication that he has required aggressive medical intervention to manage his psychologically based symptoms." (*Id.* at 21.) Ultimately, the ALJ determined that Plaintiff fails to satisfy the paragraph B criteria "[b]ecause [Plaintiff]'s mental impairment did not cause at least two 'marked' limitations or one 'extreme' limitation." (*Id.*)

To satisfy the paragraph C criteria of listing 12.04, Plaintiff's mental disorder must be "serious and persistent" such that Plaintiff has "a medically documented history of the existence of the disorder over a period of at least two years[,]" and there is evidence of both:

> [(1)] Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder; and [(2)] Marginal adjustment, that is, [the claimant has]

14

> minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life.

*Andrew S. v. Comm'r of Soc. Sec.*, No. 18-17212, 2022 WL 795746, at *5 (D.N.J. Mar. 16, 2022) (internal quotations and citations omitted). Here, the ALJ concluded that "the evidence fails to establish the presence of the 'paragraph C' criteria . . . because [Plaintiff] had more than a minimal capacity to adapt to changes in his environment or to demands that were not already part of his daily life." (AR 21.)

For the same reasons stated above, Plaintiff fails to satisfy his burden to demonstrate that the ALJ's alleged error was harmful and would have affected the outcome of the case. *Rutherford*, 399 F.3d at 553; *Woodson*, 661 F. App'x at 766; *Collado*, 2020 WL 5939793, at *5. Plaintiff cites *Andrew S.*, 2022 WL 795746, at *1, to argue that the Court must remand because the ALJ did not "make specific findings of fact regarding Plaintiff's ability to adapt and manage himself *in a work setting*."[5] (Pl.'s Moving Br. 31-34.) Specifically, Plaintiff argues that the ALJ considered Plaintiff's ability to drive, attend church, or partake in his hobbies like using a smartphone or tablet, playing games, watching television, or playing with remote control cars (AR 20), which are irrelevant to mental functions required in a work environment. (Pl.'s Moving Br. 21-31.) Yet, there is a critical distinction between the facts in *Andrews S.* and the instant case. In *Andrews S.*, the plaintiff met his burden by "point[ing] out [that] there is evidence in the record, if credited, that could support his contention that he suffers from an extreme limitation in adapting or managing

---

[5] Certainly, the ALJ must consider whether Plaintiff's mental functioning impacts his abilities in a work setting. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00G3b(i) ("Understanding, remembering, or applying information . . . refers to the abilities to learn, recall, and use information to perform work activities."); *id.* at § 11.00G3b(ii) ("Interacting with others . . . refers to the abilities to relate to and work with supervisors, co-workers, and the public."); *id.* at § 11.00G3b(iii) ("Concentrating, persisting, or maintaining pace . . . refers to the abilities to focus attention on work activities and to stay on-task at a sustained rate."); *id.* at § 11.00G3b(iv) ("Adapting or managing oneself . . . refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting.").

15

himself in a work setting." *Andrew S.*, 2022 WL 795746, at *5. In this case, Plaintiff only "contend[s] that the ALJ's findings are inadequate" and his moving brief is void of any assertions that demonstrate that his impairments equate to a listed impairment. *Collado*, 2020 WL 5939793, at *4 (citing *Garrett*, 274 F. App'x at 162-63; *Creegan*, 142 F. App'x at 569); *accord Morris*, 2020 WL 6580778, at *3.

The Court, accordingly, declines to remand because Plaintiff fails to meet his burden in demonstrating that the claimed error affected the outcome of the analysis in any way.

    2.    *RFC Determination*

Finally, Plaintiff argues that the ALJ erred in determining Plaintiff's "mental RFC" because he did not reference Plaintiff's mild and moderate limitations. (Pl.'s Moving Br. 37.) In a cursory fashion, Plaintiff argues that the ALJ's decision includes "conclusory findings, arbitrary assumptions[,] and unreviewable considerations" that "are made against both psychiatrist [Dr. Matthew] Pitera and orthopedist [Dr. Johan] Reyes." (*Id.* at 38.) Plaintiff seemingly asserts that the ALJ should have rubber-stamped the medical opinions of Dr. Pitera and Dr. Reyes because both treating doctors opined that Plaintiff has severe limitations. (*See* AR 26.)

Notably, however, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). "In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz*, 577 F.3d at 505 (citing *Cotter*, 642 F.2d at 705). "However, '[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider all the evidence and give some reason for

16

discounting the evidence [he] rejects.'" *Id.* at 505-06 (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

Here, the Court finds that the ALJ's determination is supported by substantive evidence. (AR 26.) The ALJ determined that Dr. Pitera's "checklist-style forms appear to have been completed as an accommodation to [Plaintiff] and include only conclusions regarding functional limitations with little support, rationale, or objective findings for those conclusions" and are "inconsistent with the longitudinal record, . . . and [Plaintiff's] daily activities." (*Id.*) Next, the ALJ considered that Dr. Reyes's opinion was inconsistent with "the abnormalities noted on objective imaging" and were "conclusory [because] he provides no objective support for [his] determinations." (*Id.*) Instead, the ALJ found the medical determinations of State agency psychological consultants Dr. Melanie Callender and Dr. Teissy Meza persuasive because "their findings are generally consistent with the medical evidence" and "medical status examinations." (*Id.* at 25-26.) The ALJ further considered that Dr. Callender and Dr. Meza, as State agency consultants, "are experts in their field, and used their knowledge of the disability program in assessing [Plaintiff's] functional limitations" after reviewing the available record. (*Id.* at 25.) *See Myers v. Barnhart*, 57 F. App'x 990, 996 (3d Cir. 2003) ("[A]n ALJ can choose to accept the findings of evaluating, non-examining state agency physicians over the opinions of treating physicians where the treating physicians' opinions were 'conclusory and unsupported by the medical evidence' and contradictory to other medical evidence of record." (quoting *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)).

To the extent Plaintiff argues that the ALJ failed to properly include Plaintiff's mental limitations in his RFC, the argument is without support. As already discussed in this Memorandum Opinion, Plaintiff fails to overcome his burden in demonstrating that this Court must remand the

case because he fails to provide specific evidence that but for the ALJ's allegedly erroneous determinations, the outcome of the case would have changed. (*See generally* Pl.'s Moving Br.) Plaintiff does not provide specific citations to the record or point to any evidence that the ALJ overlooked in making his determinations. (*Id.*) *See Woodson*, 661 F. App'x at 766. At this juncture, having explained at length the necessary burden Plaintiff must meet to convince this Court that remand is warranted (*see supra* Section III.A.2), the Court finds that the ALJ's RFC finding is supported by substantial evidence in the record.

## IV.   CONCLUSION

For the reasons outlined above, the Court affirms the Commissioner's decision. An Order consistent with this Memorandum Opinion will be entered.

*/s/ Michael A. Shipp*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE